IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HEWLETT-PACKARD COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 07-650 (SLR) |
| | ) | |
| ACCELERON, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT ACCELERON, LLC'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP
John W. Shaw (No. 3362)
Michele Sherretta Budicak (No. 4651)
1000 West Street, 17th Floor
Wilmington, DE 19801
302-571-6600
jshaw@ycst.com
  *Attorneys for Defendant*

*Of Counsel:*
Patrick J. Flinn
George D. Medlock, Jr.
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
404-881-7000

Sarah C. Hsia
ALSTON & BIRD LLP
90 Park Ave.
New York, NY 10016
212-210-9400

Dated: December 21, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.      NATURE AND STAGE OF THE PROCEEDINGS ...................................................1

II.     SUMMARY OF ARGUMENT ...................................................................................2

III.    STATEMENT OF FACTS ..........................................................................................3

IV.     LEGAL STANDARD..................................................................................................6

V.      ARGUMENT................................................................................................................9

        A.      There Is No Case or Controversy That Supports the
                Exercise of Subject Matter Jurisdiction over This Case ...................................9

                (i)     The Parties Do Not Have Adverse Legal Interests ...............................9

                (ii)    There Is No Substantial Controversy between the Parties...................10

        B.      The Mere Mention of a Patent in Seeking a Confidentiality
                Agreement Cannot Be Found  to Create a Substantial Controversy
                for Purposes of Jurisdiction ..........................................................................13

        C.      The Court Should Use Its Discretion and Dismiss This Action
                Even If It Finds an Actual Controversy Exists ...............................................14

VII.    CONCLUSION...........................................................................................................17

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Adenta GMBH v. OrthoArm, Inc.*, ...................................................................6
  501 F.3d 1364 (Fed. Cir. 2007)

*Aetna Life Insurance Co. v. Haworth*, ...................................................7, 8, 13
  300 U.S. 227

*BP Chemicals Ltd. v. Union Carbide Corp.*, ...................................................8
  4 F.3d 975 (Fed. Cir. 1993)

*Benitec Austl., Ltd. v. Nucleonics, Inc.*, ...................................................7
  495 F.3d 1340 (Fed. Cir. 2007)

*Echostar Satellite LLC v. Finisar Corp.*, ...................................................6
  515 F. Supp. 2d 447 (D. Del. 2007)

*EMC Corp. v. Norand Corp.*, ...................................................15
  89 F.3d 807 (Fed. Cir. 1996)

*Gotha v. United States*, ...................................................6
  115 F.3d 176 (3d Cir. 1977)

*Jervis B. Webb Co. v. Southern Systems, Inc.*, ...................................................10
  742 F.2d 1388 (Fed. Cir. 1984)

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, ...................................................2, 7
  312 U.S. 270 (1941)

*Merchandising Technologies, Inc. v. Telefonix, Inc.*, ...................................................7
  No. 05cv1195, 2007 WL 464710 (D. Or. Feb. 7, 2007)

*Merck & Co. v. Apotex, Inc.*, ...................................................14
  488 F. Supp. 2d 418 (D. Del. 2007)

*Medimmune, Inc. v. Genentech, Inc.*, ...................................................7
  127 S.Ct. 764 (2007)

*Mortensen v. First Fed. Sav. and Loan*, ...................................................6
  549 F.2d 884 (3d Cir. 1977)

*Polaroid Corp. v. Berkey Photo, Inc.*, ...................................................10
  425 F. Supp. 605 (D. Del. 1976)

*Rite-Hite Corp. v. Delta T Corp.*,.................................................................................8, 10
 No. 06-C-1187, 2007 WL 725327 (E.D. Wis. Mar. 7, 2007)

*SanDisk Corp. v. STMicroelectronics, Inc.*,.........................................................2, 7, 8, 11, 13
 480 F.3d 1372 (Fed. Cir. 2007)

*Sierra Applied Scis. v. Advanced Energy Indus., Inc.*,................................................................6
 363 F.3d 1361 (Fed. Cir. 2004)

*Sony Electronics, Inc. v. Guardian Media Techs., Ltd.*, ............................................................12
 497 F.3d 1271 (Fed. Cir. 2007)

*Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.*, ...................................14
 482 F.3d 1330 (Fed. Cir. 2007)

## FEDERAL STATUTES

28 U.S.C. §§ 2201-02 ...............................................................................................................2

Fed. R. Civ. P. 12(b)(1)............................................................................................................6

## I.    NATURE AND STAGE OF THE PROCEEDING

Hewlett-Packard Company ("HP") filed a Complaint for Declaratory Judgment against Acceleron, LLC ("Acceleron") on October 17, 2007, asking for a declaration that HP's products do not infringe US Patent No. 6,918,021 (the "'021 patent") owned by Acceleron. HP also seeks a declaration that the '021 patent is invalid. This is the only litigation involving this patent. Acceleron has not sued, or threatened to sue, any party regarding the '021 patent.

Prior to the inception of this action, Acceleron sent a letter to HP which merely brought the '021 patent to HP's attention, and sought to initiate discussions about the patent with HP. Acceleron's letters also sought HP's agreement to enter into a confidentiality agreement concerning these discussions. Acceleron has never asserted its patent rights against HP, nor has it ever alleged that HP's products infringe the '021 patent. HP, however, filed a complaint in the present action, and, at the same time, sought to commence discussions with Acceleron. The parties are currently in the process of scheduling in-person discussions to attempt to resolve this dispute for early January.

Acceleron contends that there is no case or controversy that would support jurisdiction under Article III of the Constitution or the Declaratory Judgment Act. To find that a substantial controversy exists at the mere mention of a patent would contradict the holdings of the Federal Circuit and the Supreme Court, and would result in precisely the kind of advisory opinion that the Declaratory Judgment Act seeks to avoid. Acceleron further notes that the Court should exercise its discretion to decline jurisdiction even if a case or controversy was to exist, as the parties are in the process of commencing discussions to attempt to resolve this matter.

This is Acceleron's memorandum of law in support of its motion to dismiss the Complaint in its entirety.

## II.    SUMMARY OF ARGUMENT

1.    There is no justiciable case or controversy that would support jurisdiction under Article III of the U.S. Constitution or the Declaratory Judgment Act, as HP has failed to demonstrate that there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941); 28 U.S.C. §§ 2201-02. Specifically, Acceleron has never engaged in any conduct that would support a contention that the parties have adverse legal interests, and has neither alleged infringement nor acted affirmatively to assert its patent rights against HP.  Furthermore, HP's declaratory judgment claims call for exactly the kind of advisory and hypothetical opinion that the Declaratory Judgment Act seeks to avoid.

2.    The mere mention of a patent in a letter from a patent owner does not – and should not – give rise to a controversy substantial enough to support jurisdiction over a declaratory judgment claim, and to find otherwise would conflict with the holding of the Federal Circuit in the *SanDisk* case that a declaratory defendant could have sought a confidentiality agreement with the declaratory plaintiff to avoid the risk of a declaratory judgment action.

3.    The Court should exercise its discretion under the Declaratory Judgment Act to decline jurisdiction over this case even assuming, arguendo, that HP is able to show the existence of an actual controversy, as the parties are in the process of scheduling discussions to try and resolve this matter.

### III.    STATEMENT OF FACTS

Acceleron LLC ("Acceleron") is a small business in Tyler, Texas run by Thomas B. Ramey III, its President. Acceleron acquired U.S. Patent 6,918,021 (the "'021 patent") on May 31, 2007. The '021 patent is titled "Cluster Component Network Appliance System and Method for Enhancing Fault Tolerance and Hot-Swapping" and was issued on September 20, 2005. Generally speaking, this patent relates to "server blades," a generic term for self-contained computer servers which are designed for high density. Server blades must be small and compact, so they typically do not contain certain common features and resources such as power supplies and I/O modules, but rather share these resources via a chassis to which multiple server blades connect simultaneously. More specifically, the '021 patent relates to "hot-swappable" server blade systems, meaning that each individual server blade can be connected and disconnected without requiring the shared resources or other server blades to be powered down or otherwise impacted.

Having acquired the '021 patent, Mr. Ramey became interested in initiating discussions about the patent with HP, who he knew to be a company that manufactured server blade systems, although he did not – and does not – have any detailed knowledge as to the design or functionality of the HP server blade systems, nor did he – or does he – have any idea whether the HP server blade systems infringe one or more claims of the '021 patent. Declaration of Thomas B. Ramey III (Ramey Decl.), ¶ 6. To that end, on September 14, 2007, Mr. Ramey sent a letter to Michael Holston, the Executive Vice President and General Counsel at HP to bring the '021 patent to HP's attention. *See* Ramey Decl., ¶ 2 & Ex. A. The letter stated, in relevant part, "I am writing to call your attention to the referenced patent…the patent was recently acquired by Acceleron and relates to Blade Servers." Ramey Decl., Ex. A. The letter then went on to say

3

that Acceleron would like an opportunity to discuss the patent with HP and asked that if HP was interested in discussing the patent, HP sign the bottom of the letter, agreeing to the terms of a confidentiality agreement, and return it to Acceleron.

On October 1, 2007, HP's Senior Litigation Counsel, Grant Ritz, responded with a letter addressed to Thomas Ramey at Acceleron. *See* Ramey Decl., ¶ 3 & Ex. B. The letter assumed that Acceleron was taking an adverse position towards HP regarding the '021 patent, and stated that HP would not file a declaratory judgment action against Acceleron for a period of 120 days if Acceleron also agreed not to file a declaratory judgment action against HP during the same 120 days. Ramey Decl., Ex. B.

In response to HP's letter dated October 1, 2007, Acceleron wrote that, while it appreciated HP's interest in creating a productive atmosphere in which to discuss the '021 patent, it did not believe that HP had a basis for filing a declaratory judgment action against Acceleron. *See* Ramey Decl., ¶ 4 & Ex. C. Acceleron also reiterated its interest in initiating discussions if HP were willing to send a signed copy of its original September 14, 2007 letter, agreeing to the terms of a confidentiality agreement, back to Acceleron. Importantly, Acceleron never indicated that HP had in any way infringed its patent, nor did Acceleron ever suggest that it was interested in bringing any claims against HP for infringement. *See* Ramey Decl., Exs. A & C. Indeed, as noted above, Acceleron does not know whether HP's products potentially infringe the '021 patent or not, hence its interest in merely discussing the patent with HP. *See* Ramey Decl., ¶ 6. Acceleron did nothing more than bring its newly-acquired patent to HP's attention and state its interest in discussing the patent with HP. *See* Ramey Decl., Exs. A & C. Importantly, Acceleron has not sued anyone, or even threatened to sue anyone, regarding the '021 patent, or any other matter. *See* Ramey Decl., ¶ 7.

4

Upon receipt of Acceleron's letter dated October 5, 2007, HP continued its incorrect assumption about Acceleron's intentions, and initiated the present declaratory judgment action, despite the fact that there was no case or controversy that would support jurisdiction under the Declaratory Judgment Act or Article III of the U.S. Constitution.   On October 19, 2007 Acceleron received a letter from Darryl Woo at Fenwick & West, LLP, who had been retained by HP as outside litigation counsel.  The letter purported to notify Acceleron that HP had filed the present Complaint for Declaratory Judgment against Acceleron in the US District Court for the District of Delaware.  *See* Ramey Decl., ¶ 5 & Ex. D.  The letter also enclosed an informational copy of the Complaint, but did not indicate that the Complaint had been served. The parties have since exchanged emails and conducted a call to attempt to schedule discussions regarding the '021 patent, in an attempt to resolve this matter without necessitating resolution by the Court.

## IV.    LEGAL STANDARD

Federal Rule 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter of a complaint, and motions brought under this rule may present either a facial or factual challenge to the jurisdiction of the Court. Fed. R. Civ. P. 12(b)(1); *Echostar Satellite LLC. v. Finisar Corp.*, 515 F. Supp. 2d 447, 450 (D. Del. 2007) (noting that challenges to a court's jurisdiction must be either facial or factual).  Where, as here, a declaratory defendant brings a factual challenge to the court's subject matter jurisdiction, the court is not confined to the allegations in the complaint and the presumption of truthfulness does not attach to the allegations of the complaint; rather, the Court must examine all the facts relevant to the existence of a case-or-controversy. *Id.* (citing *Mortensen v. First Fed. Sav. and Loan*, 549 F.2d 884, 891 (3d Cir. 1977). The court may – and should – consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction. *Id.* (citing *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1977) (holding that resolution of factual issues concerning jurisdiction allows the consideration of evidence outside of the pleadings).

In cases involving patents, Federal Circuit law governs whether there is a case or controversy. *Adenta GMBH v. OrthoArm, Inc.*, 501 F.3d 1364, 1368 (Fed. Cir. 2007) (holding that whether an actual case or controversy exists so that a district court may entertain an action for declaratory judgment for non-infringement and/or invalidity is governed by Federal Circuit law).  Under the law of the Federal Circuit, once a court's subject matter jurisdiction over a complaint is challenged, the burden shifts to the Plaintiff to prove that jurisdiction exists. *See Sierra Applied Scis. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1373 (Fed. Cir. 2004) (citations omitted). HP, as the declaratory plaintiff in the present action, now bears the burden of

proving, by a preponderance of the evidence, that its declaratory judgment action satisfies the case-or-controversy requirement of Article III of the U.S. Constitution. To do so, HP must show the existence of an actual case or controversy at the time it filed its Complaint seeking a declaratory judgment, and must establish that declaratory judgment jurisdiction has continued at all times after the action was filed. *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007); *Merchandising Technologies, Inc. v. Telefonix, Inc.*, No. 05cv1195, 2007 WL 464710, at *4 (D. Or. Feb. 7, 2007) (stating that an actual controversy must exist at the time the complaint is filed and later events may not create jurisdiction where none existed at the time of filing). Thus, in order for this Court to properly exercise subject matter jurisdiction over the present action, HP must prove, by a preponderance of the evidence, not only that there was an actual case or controversy at the time it filed the Complaint, but also that that controversy continues to exist today.

The "actual controversy" requirement of the Declaratory Judgment Act is rooted in Article III of the Constitution, which provides for federal jurisdiction over only "cases and controversies." *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937); *see also SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1378 (Fed. Cir. 2007). The Supreme Court has held that in determining whether a case or controversy exists for purposes of Article III jurisdiction, the Court must examine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see also Medimmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764, 771 (2007) (following *Maryland Casualty* and *Aetna* in holding that "the dispute must be 'definite and concrete, touching the legal relations of parties having

7

adverse legal interests' and that it be 'real and substantial'"); *Benitec*, 495 F.3d at 1344 (holding that the concepts of adverse legal rights and legal risk as a standard for jurisdiction require that there be an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact that the declaratory plaintiff has preempted it). The first requirement is that the parties have adverse legal interests. *Id.* The second requirement is that there be a substantial controversy of a "definite and concrete" nature, and one which does not call for an "opinion advising what the law would be upon a hypothetical state of facts." *Aetna*, 300 U.S. at 240-41.

Absent some affirmative act by the patentee, declaratory judgment jurisdiction will not arise merely because a party learns of the existence of a patent owned by another or perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee. *SanDisk*, 480 F.3d at 1380-81 (finding that conduct prior to the existence of a license will not give rise to declaratory judgment jurisdiction merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee). Indeed, the mere existence of an adversely held patent is insufficient to establish the requisite controversy. *Rite-Hite Corp. v. Delta T Corp.*, No. 06-C-1187, 2007 WL 725327, at *5 (E.D. Wis. Mar. 7, 2007) (*citing BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993)). For jurisdiction to attach, a patentee must assert its rights under a patent based on certain identified ongoing or planned activity of another party, and that party must then contend that it has the right to engage in the accused activity without a license for an Article III case or controversy to arise. *SanDisk*, 480 F.3d at 1381.

# V.   ARGUMENT

## A.   There Is No Case or Controversy That Supports the Exercise of Subject Matter Jurisdiction over This Case

This action must be dismissed for lack of subject matter jurisdiction, because there is no case or controversy that supports the exercise of jurisdiction under Article III of the U.S. Constitution.  Upon examination of the facts surrounding the institution of the Complaint, it is clear that the parties do not have adverse legal interests, and that there is not a substantial controversy of sufficient immediacy and reality between them that would support the exercise of jurisdiction by this Court.  *See generally,* Ramey Decl., Exs. A & C.  Indeed, Acceleron has never alleged that HP has infringed its patent, and does not know whether HP's products read on the claims of the '021 patent or not.  Acceleron has never identified any specific HP products which might be implicated by the '021 patent, nor has Acceleron sent HP a cease and desist letter or presented any infringement analysis comparing HP's products against the claims of the '021 patent.  Acceleron has never provided HP with any information such as infringement claim charts or reverse engineering reports.  In fact, Acceleron has never acted affirmatively to assert its patent rights against HP at all.  All Acceleron has done is send a simple letter requesting an opportunity to meet with HP to discuss the '021 patent, and seeking a confidentiality agreement and assurances that this simple request would not be used as grounds for a declaratory judgment action, nothing more.

### (i)   The Parties Do Not Have Adverse Legal Interests.

HP cannot meet its burden of demonstrating a substantial controversy as it fails to demonstrate that the parties have adverse legal interests.  The letters from Acceleron to HP do not establish that the interests of the parties are adverse.  And, as detailed in the Declaration of Tom Ramey, Acceleron has no idea whether the interests of the parties are adverse.  Ramey

Decl., ¶ 6.  Armed with a detailed knowledge of its own products, and an understanding of the scope of the claims of the '021 patent, HP perhaps *assumed* that the legal interests of the parties were adverse.  But, unless HP is prepared to admit that its products infringe one or more of the claims of the '021 patent, HP cannot claim that the legal interests of the parties are adverse without any affirmative action by Acceleron.  *See Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984) (holding that a declaratory plaintiff seeking a judgment of invalidity must have produced, or been prepared to produce, an accused device).

Furthermore, this Court has held that even competitors who may be loosely considered adversaries in the business sense are not, *per se*, adversaries in the legal sense until it can be shown that there is some concrete controversy between them.  *See Polaroid Corp. v. Berkey Photo, Inc.*, 425 F. Supp. 605, 609 (D. Del. 1976) (holding that where there is neither current infringing activity, nor a charge of infringement and there is only the vigilance of a trademark holder to protect its mark, a justiciable controversy does not exist).  And even the mere existence of an adversely held patent is insufficient to establish the requisite controversy.  *Rite-Hite*, 2007 WL 725327, at *5.  Although Acceleron and HP both have an interest in server blade systems in a generic sense, they cannot be considered adversaries until there is some real controversy between them.  Here, where Acceleron has never made any claims of infringement, or otherwise asserted or threatened to assert the '021 patent against HP, the mutual interest of the parties in server blade systems is simply insufficient to demonstrate that HP and Acceleron are legal adversaries, as there is no evidence of any concrete controversy between them.

### (ii)    There Is No Substantial Controversy between the Parties.

HP's allegations that an actual case or controversy exists between Acceleron and HP are misplaced.  HP alleges that Acceleron asserted that HP's products infringe the '021 patent, and

that Acceleron has asserted its patent rights against HP based on certain ongoing activity by HP; however, the record is clear that Acceleron never made any such assertions. In the correspondence between Acceleron and HP, Acceleron has never identified any of HP's products, has never asserted that HP's products infringe Acceleron's patent, and it has never even asserted that its patent is relevant to any of HP's products. *See* Ramey Decl., Exs. C & E.

HP appears to argue that Acceleron's use of the term "Blade Servers" in relation to the '021 patent is sufficient evidence of Acceleron's alleged assertion of its patent rights against HP to support the finding of a substantial controversy between the parties. (07-650, D.I. 1). However, the term "blade server" is a generic term which refers to any self-contained computer server designed for high density, and is not a term which is associated with specific HP products. Wikipedia.com, Definition of Blade Server, http://en.wikipedia.org/wiki/Blade_server (last accessed December 18, 2007). Indeed, the HP "blade server system" is called a "BladeSystem™," and Acceleron has never even so much as mentioned this term in any of its correspondence with HP. There is simply no evidence to support HP's allegations that Acceleron asserted its patent against HP's products; to the contrary, all of the evidence merely shows Acceleron's desire to discuss the patent with HP.

HP has thus failed to show any affirmative action by Acceleron to assert its patent rights and has thus also failed to meet its burden of proving the existence of a substantial controversy between the parties that would give rise to subject matter jurisdiction for a declaratory judgment action. Courts have found jurisdiction over a declaratory judgment complaint to be proper only when a patent holder affirmatively acts to enforce its patent rights. *See, e.g., SanDisk,* 480 F.3d at 1380-81. Examples of affirmative acts giving rise to a substantial controversy for purposes of declaratory judgment jurisdiction include outright infringement allegations, such as a

11

presentation of an infringement analysis by seasoned litigation experts to the other party during "licensing negotiations" in which one or more claims of the patents were read on the other party's identified products or provision of materials containing reverse engineering reports for the other party's products and diagrams showing a detailed infringement analysis of the other party's products against the patent at issue. *Id*. at 1382. Affirmative acts of a less direct nature also found to give rise to a substantial controversy include letters from the inventor or patent assignee to the declaratory judgment plaintiff identifying specific products made or sold by the plaintiff that infringed claims of the patent-at-issue. *See Sony Electronics, Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1274-76 (Fed. Cir. 2007). Letters asserting that the patent holder was owed royalties based on specific past and ongoing activities by the declaratory judgment plaintiff have also been found to give rise to a substantial controversy. *Id*. at 1286.

However, in all of the cases where declaratory judgment was found, there was a letter or affirmative act by the patent holder asserting its patent rights against the declaratory judgment plaintiff. Here, there is no such letter nor any affirmative act. Acceleron has never alleged that HP has infringed its patent. Acceleron has never identified any specific HP products. Acceleron has never sent HP a cease and desist letter alleging that HP's products infringe Acceleron's patent. Acceleron has never presented to HP an infringement analysis of HP's products against the claims of the '021 patent. Acceleron has never provided HP with any information such as infringement claim charts or reverse engineering reports. In fact, Acceleron has never acted affirmatively to assert its patent rights against HP at all, nor does it know conclusively whether HP or its products do, in fact, infringe the claims of the '021 patent. Nor has Acceleron ever sued or threatened to sue any other party. Ramey Decl., ¶ 7.

Without any affirmative action on the part of Acceleron, HP is, in essence, asking the Court to decide a hypothetical case, namely, whether, if Acceleron were to assert the '021 patent against it, the patent could be declared invalid or unenforceable, or HP could be found not to infringe. This is impermissible and would constitute an extension of federal judicial power beyond the circumstances contemplated by the Declaratory Judgment Act. *See Aetna*, 300 U.S. at 240.

**B.     The Mere Mention of a Patent in Seeking a Confidentiality Agreement Cannot Be Found to Create a Substantial Controversy for Purposes of Jurisdiction**

To find that the mere mention of a patent in a letter from a patent owner gives rise to a controversy substantial enough to support jurisdiction over a declaratory judgment claim is an absurd result, and would conflict with the holding of the Federal Circuit in the *SanDisk* case. In *SanDisk*, the Federal Circuit explicitly noted that, to avoid the risk of a declaratory judgment action, the declaratory defendant "could have sought [the declaratory plaintiff's] agreement to the terms of a suitable confidentiality agreement." *SanDisk*, 480 F.3d at 1375 n.1. This language clearly indicates that preliminary correspondence and discussions between two parties seeking to enter into a confidentiality agreement *cannot* be found to create a substantial controversy for the purposes of declaratory judgment jurisdiction; otherwise, there would be no way for the parties to seek, negotiate or enter into such a confidentiality agreement. In the present case, Acceleron sought HP's agreement to a confidentiality agreement in its initial letter. Ramey Decl., Ex. A. Acceleron again sought HP's agreement to a confidentiality agreement in its response to HP's initial letter. Ramey Decl., Ex. C. And, importantly, even in HP's letter alerting Acceleron to the declaratory judgment complaint it had filed against Acceleron, HP also sought a confidentiality agreement beyond the scope of FRE 408: "[i]f you are interested in having such a discussion and exchange of information, please sign and return a copy of this

13

letter, whereby you agree that, in addition to the limitations provided by Federal Rule of Evidence 408, our discussions, correspondence and exchange of information will be confidential, and will not be disclosed to any third parties." Ramey Decl., Ex. D. Acceleron's actions fall squarely within the parameters set forth by the Federal Circuit for conduct which does not give rise to declaratory judgment jurisdiction, and, as such, this case should be dismissed.

Patent owners must be free to discuss their patents with others without fear of providing the basis for a declaratory judgment action. Any other holding would simply encourage patent owners to "shoot first and ask questions later," resulting in an increase in needless patent infringement actions – like this one – clogging an already overcrowded judicial docket. Here, Acceleron's intent was to start a discussion, not a war. Acceleron had no idea whether HP's products actually infringe the claims of the '021 patent, and, as such, there is no basis for HP to claim that the parties have adverse legal interests, or that a substantial controversy between the parties exists. Without more, HP's claim for declaratory judgment calls for exactly the kind of advisory opinion that the substantial controversy requirement seeks to avoid.

**C.    The Court Should Use Its Discretion and Dismiss This
       Action Even If It Finds an Actual Controversy Exists.**

Even assuming, *arguendo*, that HP is capable of meeting its burden of proving that an actual controversy existed, the Court should use its discretion to dismiss this action. A district court is not required to exercise its jurisdiction under the Declaratory Judgment Act, but instead has discretionary power. *See Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.*, 482 F.3d 1330, 1338 n.3 (Fed. Cir. 2007) (noting that, under the Declaratory Judgment Act, a district court retains discretion to decline declaratory judgment jurisdiction); *see also Merck & Co. v. Apotex, Inc.*, 488 F. Supp. 2d 418, 422 (D. Del. 2007) (stating that even when an

actual controversy does exist sufficient to warrant subject matter jurisdiction, the district court is not required to exercise declaratory judgment jurisdiction but has the discretion to decline that jurisdiction).

For example, in *EMC Corp. v. Norand Corp.*, the Federal Circuit found that, even though a sufficient controversy existed for purposes of jurisdiction, the district court did not abuse its discretion in declining to exercise declaratory judgment jurisdiction because the district court determined that the parties were still in active license or sale negotiations, and entertaining a declaratory judgment action would have been inconsistent with the purposes of the Declaratory Judgment Act. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811, 815 (Fed. Cir. 1996). Such is the case here. Acceleron and HP are in the process of scheduling discussions regarding the '021 patent; the parties are attempting to find a mutually convenient time to meet in early January. It should be noted that these discussions are not contemplated as licensing or sale discussions; indeed, as noted above, Acceleron does not know whether the '021 patent is even relevant to HP's products. However, like in EMC, entertaining this declaratory judgment action would be inconsistent with the purposes of the Declaratory Judgment Act. Here, where the existence of a substantial controversy is, at the very least, questionable, and the parties are engaging in discussions to try and resolve the matter, would seem to be a waste of judicial resources.

Furthermore, courts have declined to exercise declaratory judgment jurisdiction when it would "creat[e] an incentive structure that is inconsistent with the public interest in preserving declaratory proceedings for cases closer to the central objectives of declaratory proceedings." *EMC*, 89 F.3d at 814. In *EMC*, the district court gave substantial weight to the idea that a declaratory plaintiff could "abuse the declaratory judgment device to obtain a more favorable bargaining position in its ongoing negotiations with the patentee and also to undermine the value

of the patent so as to impede its sale or licensing to a third party." *Id*. These facts are, again, critically similar to the facts of this case. Here, HP, perhaps *assuming* that its products infringe the claims of the '021 patent, brought a declaratory judgment action, and then sought to commence "early settlement discussions" with Acceleron. *See* Ramey Decl., Ex. D. HP was certainly counting on the advantage that accrued to it by being "first-to-file" and there can be no doubt that exercising jurisdiction over this case would only create additional incentive for parties to race to the courthouse steps, further burdening an already overcrowded docket. This Court should thus exercise its discretion to decline jurisdiction over this case, even if it finds a substantial controversy exists.

## VI.    **CONCLUSION**

For the foregoing reasons, Acceleron respectfully requests that this Court dismiss the

Complaint in its entirety.

Respectfully submitted,

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
John W. Shaw (No. 3362)
Michele Sherretta Budicak (No. 4651)
1000 West Street, 17th Floor
Wilmington, DE  19801
302-571-6600
jshaw@ycst.com
*Attorneys for Defendant*

*Of Counsel:*

Patrick J. Flinn
George Medlock, Jr.
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
404-881-7000

Sarah C. Hsia
ALSTON & BIRD LLP
90 Park Ave.
New York, NY 10016
212-210-9400

Dated:  December 21, 2007

DB02:6454626.1          900002.0003

## CERTIFICATE OF SERVICE

I, John W. Shaw, Esquire, hereby certify that on December 21, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> William J. Wade, Esquire
> Anne Shea Gaza, Esquire
> Richards, Layton & Finger, P.A.
> One Rodney Square
> 920 North King Street
> Wilmington, DE 19801

I further certify that on December 21, 2007, I caused a true and correct copy of the foregoing document to be served by e-mail and hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY E-MAIL

> Darryl M. Woo, Esquire [dwoo@fenwick.com]
> Charlene M. Morrow, Esquire [cmorrow@fenwick.com]
> Heather N. Mewes, Esquire [hmewes@fenwick.com]
> Fenwick & West LLP
> 555 California Street, 12th Floor
> San Francisco, CA 94104

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

John W. Shaw (No. 3362)
[jshaw@ycst.com]
Michele Sherretta Budicak (No. 4651)
[mbudicak@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899
(302) 571-6600

Attorneys for Defendant
ACCELERON, LLC