IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HEWLETT-PACKARD COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 07-650-SLR |
| | ) | |
| ACCELERON, LLC | ) | |
| | ) | |
| Defendant. | ) | |

William J. Wade, Esquire and Anne Shea Gaza, Esquire of Richards, Layton & Finger, P.A., Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Darryl M. Woo, Esquire, Charlene M. Morrow, Esquire and Heather N. Mewes, Esquire of Fenwick & West LLP, San Francisco, California.

John W. Shaw, Esquire and Michele Sherretta Budicak, Esquire of Young Conaway Stargatt & Talyor, LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Patrick J. Flinn, Esquire, and George D. Medlock, Jr., Esquire, of Alston & Bird LLP, Atlanta, Georgia, and Sarah C. Hsia, Esquire of Alston & Bird LLP, New York, New York.

**MEMORANDUM OPINION**

Dated: March 10, 2009
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Hewlett-Packard Company ("plaintiff" or "HP") brought this action against defendant Acceleron, LLC ("defendant") on October 17, 2007, seeking declaratory judgment of non-infringement and invalidity of U.S. Patent No. 6,948,021 ("the '021 patent"). (D.I. 1) Following a stay, on December 21, 2007, defendant moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the court lacks subject matter jurisdiction over the action. (D.I. 8) More specifically, defendant argues that the Declaratory Judgment Act, 28 U.S.C. § 2201(a), does not confer subject matter jurisdiction on the court because, as of the date the action commenced, there was no "case of actual controversy" between plaintiff and defendant regarding the '021 patent. (D.I. 9) The motion has been fully briefed. (D.I. 9, 20, 21) For the reasons that follow, the court grants the motion.

## II. BACKGROUND

This dispute centers around a letter addressed from Thomas B. Ramey, III, President of Acceleron, to Michael J. Holston, plaintiff's "Executive Vice-President, General Counsel/Secretary," on September 14, 2007, which letter has been reproduced below.

Re:    U.S. Patent No. 6,948,021 to Derrico et al. [. . .]

Dear Mr. Holston:

I am writing to call your attention to the referenced patent, a copy of which is enclosed herewith. This patent was recently acquired by Acceleron, and relates to Blade Servers.

We would like an opportunity to discuss this patent with you. In order to provide a productive atmosphere in which we can do so, we ask that you agree

that all information exchanged between the parties will not be used for any litigation purposes whatsoever, including but not limited to any claim that Acceleron has asserted any rights against any of your ongoing or planned activities, or otherwise created any actual case or controversy regarding the enclosed patent.

Should you wish to engage in discussions regarding this patent with us, please return an executed copy of this letter to me in the enclosed stamped, self-addressed envelope. When we receive your acknowledgement, we will send you a package of information relating to this patent. I will look for your response by September 28, 2007, and if I do not hear from you by that time, I will assume you have no interest in discussing this patent.

(D.I. 10, ex. A) The Sepetmber 14th letter prompted the following (October 1, 2007)

response from Grant Ritz ("Ritz"), the attorney assigned to the matter for plaintiff:

I have been evaluating the patent you sent and am interested to learn any further information you have so that I am able to conduct a complete and accurate assessment. HP shares your interest in creating a productive atmosphere for us to discuss the '021 patent. Accordingly, in response to your request that HP not file a declaratory judgment action, HP would be willing to agree not to file such an action for a period of 120 days if Acceleron similarly will agree not to file an action against HP during the same 120 day period. If such a mutual standstill agreement is acceptable, please let me know and I will send you an agreement to that effect directly.

(Id., ex. B) On October 5, 2007, Ramey sent Ritz the following response:

Thank you for your letter dated October 1, 2007. I appreciate Hewlett-Packard's interest in creating a productive atmosphere in which to discuss the referenced patent, and look forward to the opportunity to discuss this patent with you.

However, I do not believe that HP has any basis for filing a declaratory judgment action, and I think that my letter provides both parties appropriate protections to create a productive atmosphere in which to discuss the '021 patent.

So, if you are interested in discussing this patent with us, please send me a signed copy of my previous letter to you by no later than October 19, 2007. If I do not receive [one] by then, I will understand that you are not interested in discussing this patent, and you do not have anything to say about the merits of this patent, or its relevance to your Blade Server products.

(*Id.*, ex. C)

On October 17, 1007, plaintiff filed the instant declaratory judgment action; service was effected October 18, 2007.  (D.I. 1, 5)  By letter dated October 19, 2007, Darryl M. Woo ("Woo"), plaintiff's litigation counsel, informed Ramey that suit was filed and that plaintiff "remains interested in having an early settlement discussion in an effort to resolve the dispute concerning Acceleron's contentions regarding the '021 patent and HP's blade server products."  (D.I. 10, ex. D)

Defendant filed its motion to dismiss on December 21, 2007.  (D.I. 8)  On February 29, 2008, the parties agreed to stay briefing and oral argument relating to the motion to dismiss so that the parties could attempt settlement.  (D.I. 16)  Settlement was not reached.  The court lifted the stay on proceedings on October 1, 2008 and the parties subsequently completed briefing.

## III. STANDARD OF REVIEW

"Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter, or if the plaintiff lacks standing to bring his claim." *Samsung Elecs. Co., Ltd. v. ON Semiconductor Corp.*, 541 F. Supp. 2d 645, 648 (D. Del. 2008).  Rule 12(b)(1) motions may present either a facial or factual challenge to the court's subject matter jurisdiction.  *Id.*  Where the movant presents a facial challenge, the court must accept all factual allegations in the complaint as true and may only consider the complaint and documents referenced therein or attached thereto.  *Id.* (citing *Gould Elecs., Inc., v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).  Where the movant presents a factual challenge, the court need not confine its

3

consideration to the allegations of the complaint nor accept those allegations as true. *Mortensen v. First Fed. Sav. & Loan*, 549 F.2d 884, 891 (3d Cir. 1977).  Rather, the court may consider evidence outside the pleadings, including affidavits, depositions, and testimony, "to resolve any factual issues bearing on jurisdiction."  *Samsung*, 541 F. Supp. 2d at 648 (citing *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997)). "[P]laintiff bears the burden of proving that jurisdiction exists."  *Id.*

## IV. DISCUSSION

### A. Case-or-Controversy for Purposes of the Declaratory Judgment Act

The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201.  The Declaratory Judgment Act is not an independent basis for subject matter jurisdiction, rather, it provides a remedy if the court has jurisdiction from another source.  *See Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871 (Fed. Cir. 2008) (citations omitted).   The availability of declaratory relief is limited by Article III of the Constitution, which restricts judicial power to the adjudication of "Cases" or "Controversies."  U.S. Const. Art. III, § 2.

A plaintiff bringing an action for declaratory judgment must prove, by a preponderance of the evidence, that an actual controversy exists.  *See Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992).  There is no bright-line rule in this regard; "the difference between an abstract question and a controversy contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult,

4

if it would be possible, to fashion a precise test for determining in every case whether

there is such a controversy." *Cat Tech*, 528 F.3d at 879 (citing *Md. Cas. Co. v. Pac.*

*Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (internal brackets and quotations omitted).

These principles apply with equal force in the patent context. In *MedImmune*,

the Supreme Court rejected the Federal Circuit's former "reasonable apprehension of

suit" approach to determining whether jurisdiction exists.   549 U.S. at 132 n.11.

Discussing the case-or-controversy requirement, the *MedImmune* Court stated that

> [its] decisions have required that the dispute be definite and concrete, touching
> the legal relations of parties having adverse legal interests; and that it be real
> and substantial and admit of specific relief through a decree of a conclusive
> character, as distinguished from an opinion advising what the law would be upon
> a hypothetical state of facts.  Basically, the question in each case is whether the
> facts alleged, under all the circumstances, show that there is a substantial
> controversy, between parties having adverse legal interests, of sufficient
> immediacy and reality to warrant the issuance of a declaratory judgment.

*Id.* at 127 (internal quotations, brackets and citations omitted).  In *MedImmune*, the

Supreme Court determined that it was not necessary for a patent licensee to stop

making royalty payments, *i.e.,* terminate its license, before seeking a declaratory

judgment in federal court that the underlying patent is invalid, unenforceable, or not

infringed. *Id.* at 137.  "The rule that a plaintiff must destroy a large building, bet the

farm, or (as here) risk treble damages and the loss of 80 percent of its business, before

seeking a declaration of its actively contested legal rights finds no support in Article III."

*Id.* at 134.

In *SanDisk Corporation v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir.

2007), the Federal Circuit further explained that,

> [i]n the context of conduct prior to the existence of a license, declaratory

5

judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee. But Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do. We need not define the outer boundaries of declaratory judgment jurisdiction, which will depend on the application of the principles of declaratory judgment jurisdiction to the facts and circumstances of each case. We hold only that where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.

*Id.* at 1380-81 (citing *MedImmune*, 549 U.S. at 132 n.11). The Federal Circuit has since

stated that, "[f]ollowing *MedImmune*, providing a reasonable apprehension of suit is one

of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-

the-circumstances test to establish that an action presents a justiciable Article III

controversy." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir.

2008) (citation omitted).

### B. Circumstances Pertinent to the Court's Inquiry

Plaintiff sells and markets blade servers under its BladeSystem® portfolio. (D.I.

20 at 5) Defendant does not manufacture or market blade servers or any other

products; it is a company dedicated to "accelerating the value of intellectual property

worldwide."[1]

Plaintiff asserts that an actual controversy exists because: (1) the parties have

spent the last ten months attempting to resolve what defendant acknowledges is a

---

[1]*See* http://acceleronllc.com/.

6

"dispute"; (2) defendant did not agree to a mutual stand-still agreement as proposed in Ritz's October 1, 2007 letter; (3) Ramey referred to "**your** Blade Server products" in his October 5, 2007 letter, identifying plaintiff's products and not the generic subject matter of the '021 patent; and (4) defendant did not suggest a confidentiality agreement, only that plaintiff surrender its declaratory judgment rights. (D.I. 20 at 4-7)

Ramey contacted plaintiff directly about the '021 patent. Ramey did not identify BladeSystem® by its tradename, but did indicate that he wanted to open a line of communication regarding the '021 patent's "relevance to your Blade Server products." BladeSystem® is plaintiff's only blade server portfolio.[2]

The court notes at this juncture that plaintiff has requested that the court take judicial notice of a complaint for patent infringement filed in the District Court for the Eastern District of Texas on October 28, 2008, in which defendant asserts that plaintiff, among other companies, infringes the '021 patent. (D.I. 24, ex. 1) In this complaint, defendant identifies the "HP BladeSystem®" as an infringing product. (*Id.* at ¶ 25) The Texas complaint post-dates the filing of the instant suit; therefore, it has no bearing on the question of whether "the facts existing at the time the complaint under consideration was filed" evidence jurisdiction. *GAF Bldg. Materials Corp. v. Elk Corp.*, 90 F.3d 479, 483 (Fed. Cir. 1996) (citation omitted). Similarly, the court agrees with defendant that its post-filing use of the term "dispute" is not relevant to this question. *See id.* The

---

[2]*See* http://www.hp.com/sbso/busproducts_blades.html and http://h71028.www7.hp.com/enterprise/cache/80316-0-0-0-121.html?psn=servers (last accessed March 5, 2009). The court notes that it is free to consult material outside the pleadings in evaluating the merits of a Rule 12(b)(1) factual challenge to jurisdiction. *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

7

court proceeds to analyze the other circumstances surrounding the parties' pre-suit

dealings.

With respect to defendant's failure to accept plaintiff's stand-still offer, the

Federal Circuit has previously explained that,

> although a patentee's refusal to give assurances that it will not enforce its patent
> is relevant to the determination, it is not dispositive.  A patentee has no obligation
> to spend the time and money to test a competitor's product nor to make a
> definitive determination, at the time and place of the competitor's choosing, that
> it will never bring an infringement suit.  And the patentee's silence does not alone
> make the infringement action or other interference with the plaintiff's business
> imminent.  Thus, though a defendant's failure to sign a covenant not to sue is
> one circumstance to consider in evaluating the totality of the circumstances, it is
> not sufficient to create an actual controversy – some affirmative actions by the
> defendant will also generally be necessary.

*Prasco, LLC v. Medicis Pharmaceutical Corporation*, 537 F.3d 1329, 1341 (Fed. Cir.

2008) (internal quotations and citation omitted).  We are not presented in this case with

a "silent defendant" whose prior acts or market presence has prompted a declaratory

judgment action.  *Compare Edmunds Holding Co. v. Autobytel Inc.*, Civ. No. 08-149,

2009 WL 424250, *3 (D. Del. Feb. 20, 2009).  We are presented with a non-competitor

patent holding company that directly contacted plaintiff regarding its rights in the '021

patent.  Defendant had no particular obligation to accept the terms of plaintiff's (120-

day) stand-still proposal, but its failure to do so (or to provide a counter-proposal or

some other reassurance it would not sure plaintiff) must be considered along with all of

the circumstances at bar.

The court turns next to defendant's failure to propose a confidentiality

agreement.  Ramey asked that "all information exchanged between the parties will not

be used for any litigation purposes whatsoever," including plaintiff's filing of a

declaratory judgment suit, but did not mention any confidentiality treatment for the documents. "To avoid the risk of a declaratory judgment action, [defendant] could have sought [plaintiff's] agreement to the terms of a suitable confidentiality agreement." *SanDisk*, 480 F.3d at 1375 n.1. The lack of such a proposal (or an agreement) does not establish an actual case-or-controversy, but is yet another circumstance to consider, as is Ramey's request that plaintiff not file suit.

### C. Analysis

The court has evaluated several cases in which declaratory judgment jurisdiction has been examined following the *MedImmune* decision. Often, a case or controversy is found where one of two circumstances are present: (1) the patentee/patent holder has a history of litigating in the industry and there is some direct contact with the declaratory judgment plaintiff; or (2) the contact with the declaratory judgment plaintiff includes some reference to litigation, such as a specific accusation of infringement or claim charts.

For example, in *Sony Electronics, Inc. v. Guardian Media Technologies, Ltd.*, 497 F.3d 1271 (Fed. Cir. 2007), the Federal Circuit found jurisdiction where Guardian had, in its correspondence with Sony, "explicitly identified the patents it believe[d] Sony infringes, the relevant claims of those patents, and the relevant Sony products that it allege[d] infringe those patents," and Sony "identified the specific prior art references that it believe[d] renders the claim invalid." *Id.* at 1285. The fact that the parties engaged in business discussions relative to the dispute did not prevent plaintiff from maintaining its declaratory judgment action. *Id.* at 1286.

9

In *Crutchfield New Media, LLC v. Charles E. Hill & Associates, Inc.*, Civ. No. 06-837, 2007 WL 1320750 (S.D. Ind. May 4, 2007), the court denied a motion to dismiss where defendant provided the declaratory judgment plaintiff with a certified letter "with information about the content of its patents, their file histories, selective pleadings in law suits in th[at] court and in the U.S. District Court for the Eastern District of Texas [ ], a summary of the licenses and coventees of [defendant] under the patents in suit, and a summary of the extent to which [defendant] had litigated its right to the exclusive use of the patented technology," under cover letter "invit[ing] Crutchfield to take a license under the patents in suit and invit[ing] a response by May 29, 2006." *Id.* at *1. This communication was deemed a "clear articulation" of defendant's willingness to litigate. *Id.* at *2.

Finally, in *Pharmanet, Inc. v. Datasci Limited Liability Company*, Civ. No. 08-2965, 2009 WL 396180 (D.N.J. Feb. 17, 2009), defendant, an accused "patent troll," filed seven prior lawsuits for infringement of a particular patent and was the subject of "a significant amount of attention" in the technological area, evidenced by six news articles regarding its litigation activities. *Id.* at *1. Defendant sent a letter to plaintiff: (1) indicating that an attorney was retained as intellectual property counsel; (2) identifying ownership of the patent and providing its file history; (3) listing defendant's licensees; and (4) stating the following: "[p]lease let us know if you are interested in discussing a license to DataSci's patented technology. If your company does not have an interest, we would like to receive a response as soon as possible, but no later than June 20, 2008." *Id.* at *2. The court found that plaintiff met its standard to demonstrate that an

10

actual case or controversy existed under all of the circumstances. *Id.* at *5.

In contrast, several courts have dismissed actions absent prior litigation activity or a direct reference to litigation. In *Baker Hughes Oilfield Operations, Inc. v. ReedHycalog UK, Ltd.*, Civ. No. 05-931, 2008 WL 345849 (Feb. 6, 2008), defendant sent several letters to plaintiff (each styled "Notice Letter") including language notifying plaintiff of certain of defendant's patents and recounting claim language from those patents. *Id.* at *1. The letters, however, did not contain allegations of infringement. *Id.* The court found that the letters "did not indicate that ReedHycalog had taken a position regarding infringement by Baker Hughes" as of the date of filing; the court read the communications "to show that ReedHycalog was still evaluating infringement or, at most, gearing up for litigation. In any case, ReedHycalog did not communicate to Baker Hughes anything that would indicate [it] had taken 'a position that puts [plaintiff] in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do.'" *Id.* at *3 (citing *SanDisk*, 480 F.3d at 1381).

In *The Wooster Brush Company v. Bercom International, LLC,* Civ. No. 06-474, 2008 WL 1744782 (N.D. Oh. Apr. 11, 2008), the court dismissed plaintiff's claims for a declaration of infringement and invalidity. Defendant, a competitor manufacturer, sent plaintiff a letter indicating that plaintiff's continued development of a particular product was "not without significant risk of violating future patent rights of [defendant]" for a patent that had not yet issued, and requesting that plaintiff confirm it would not proceed to market its product. *Id.* at *1. The letter concluded that "[defendant] would take whatever steps it deems to be appropriate to protect its intellectual property rights." *Id.*

In a second letter, defendant invited plaintiff to consider its recently-allowed patent claims in connection with its product, and "ended with [defendant's] request that its patent rights be respected." *Id.* The court distinguished *Sony Electronics* on the grounds that defendant's first letter was sent prior to the issuance of its patent and, notwithstanding, defendant "has never provided an infringement analysis to [plaintiff]." *Id.* at *5. Absent a "direct statement regarding infringement," the "identif[ication of] a claim under its patent that has been infringed," or "any licensing discussions [between the parties] which would support a conclusion that [plaintiff] believes infringement is occurring," the court found jurisdiction lacking. *Id.* at *4-5. *Accord Monsanto Company v. Syngenta Crop Protection, Inc.*, Civ. No. 07-543, 2008 WL 294291 (E.D. Mo. Jan. 31, 2008) (single letter from defendant stating the following did not create a sufficient case or controversy: defendant "requests that Monsanto refrain from making [allegedly infringing] recommendations on [its] labels or recommending these mixtures in the market . . . If you are of the opinion that this patent is not relevant to Monsanto, please provide the basis for that opinion . . . within two weeks"); *compare Merchandising Technologies, Inc. v. Telefonix, Inc.*, Civ. No. 05-1195, 2007 WL 464710 (D. Or. Feb. 7, 2007) (prior to *MedImmune*, finding that a "standard notice-of-patent letter" stating that defendant "ha[s] valuable intellectual rights that [it] must protect" and that plaintiff is not licensed under defendant's patent did not suffice to establish a "a reasonable apprehension of an imminent lawsuit" under prior test).

Acknowledging that there is no precise formula for a case-or-controversy, the court notes that, in the case at bar, Ramey's letters lack each of the features present in

12

*Sony Electronics*, *Crutchfield New Media*, and *Pharmanet*: a statement of infringement, identification of specific claims, claim charts, prior pleadings or litigation history, or the identification of other licensees. Although defendant's failure to specifically request a confidentiality agreement and to accept plaintiff's 120-day stand-still proposal weigh the scale in favor of finding jurisdiction, the court finds the circumstances of this case, in their totality, closer to those presented in *Baker Hughes* and *Monsanto* than in *Sony Electronics* or *Pharmanet*. The record indicates no history of litigation by defendant regarding the '021 patent, nor does defendant's direct contact with plaintiff reference (or directly imply) impending litigation. Ramey did sufficiently identify plaintiff's product line and provide a correspondence deadline; these factors, absent more, were found insufficient in *Monsanto*. *See* 2008 WL 294291 at *6.

The court appreciates that the receipt of such correspondence from a non-competitor patent holding company (or a patent troll) may invoke a different reaction than would a meet-and-discuss inquiry by a competitor, presumably with intellectual property of its own to place on the bargaining table. The court also appreciates that attorneys (such as Ramey) can draft correspondence avoiding key litigation terms yet leaving open the possibility of future action. The court's holding should not be interpreted as foreclosing jurisdiction in every case involving a carefully crafted letter. Additionally, courts should, in the totality of the circumstances, take defendant's business model into consideration. The court simply holds that, in the case at bar, plaintiff "jumped the gun" under the circumstances as they existed prior to October 17, 2007 when its complaint was filed. Litigation was, at that point, still too speculative a prospect to support declaratory judgment jurisdiction.

13

## V. CONCLUSION

For the aforementioned reasons, defendant's motion to dismiss (D.I. 8) is granted. An appropriate order shall issue.